Take your time to set up. Our next case is number 18-12663, Otto Candies, LLC, et al. versus Citigroup, Incorporated. Mr. Cooper, whenever you're ready. Good morning, Your Honor, and may it please the Court. David Cooper from Quinn Emanuel, Urquhart & Sullivan on behalf of the Plaintiffs' Appellants. It's well established that a court should refuse to exercise jurisdiction and dismiss on forum nonconvenience grounds only in rare cases, and this is very far from that rare case. This case involves U.S. companies bringing claims against a U.S. company for activities that took place largely in the United States. It is unprecedented to apply forum nonconvenience in such a situation, and the District Court committed several legal errors here in doing so. Can I ask you to address one question at some point during your argument? Of course. You mentioned American plaintiffs, and you certainly have a number of those. Do you believe that the American plaintiffs should have been treated differently than the non-American plaintiffs? No. Could they have been? Yes, they could have been. I think it's important to start with the U.S. plaintiffs, and I'll first address them and then talk about what happens to the foreign plaintiffs. Sure. So let's start with the U.S. plaintiffs. The District Court did not apply the strong presumption that this Court has always applied to U.S. plaintiffs in their choice of a U.S. forum, and the District Court's only basis for doing so was the application of an international commerce exception. The problem is the Supreme Court has never adopted that exception. This Court has never adopted that exception, and in fact, it's completely inconsistent with this Court's decision in SME RACs, which involved just as much international commerce as this case. It's also just fundamentally wrong when you're looking at U.S. plaintiffs who are entitled to the presumption that they are bringing the case where it is convenient in the United States. If you begin to import into that analysis all of these questions into what kind of a case is it, how much was international, then the presumption becomes completely swallowed by the analysis itself. Is there any limit to that principle, though? I mean, so here you've got two nominally U.S. plaintiffs, 37 non-U.S. plaintiffs, right? That's correct. And the U.S. plaintiffs, I say nominally, maybe that's not fair, but they are holding company-ish with foreign subsidiaries. And as you say, the claims that you've raised do have tentacles that reach into Mexico, surely, right? I mean, we've got RICO conspiracy aiding and abetting. There are other people involved, other entities involved. So is there any limit to the principle that if you've got, if it's one U.S. company that's you're still going to say everybody follows the U.S. plaintiff in the U.S. court? So I think, if I kind of separate that out into, because there's a couple of different pieces to it. The first question is, what about the fact that they might be nominal U.S. plaintiffs? And I think the point there is, if they believed that these plaintiffs did not have real standing, were not real partisan interests, they could have made that argument to the district court. But they did not brief that issue. And therefore, this court has no basis to disregard these plaintiffs' standing. And in fact, these plaintiffs do have clear standing. Otto Candies, for example, through a U.S. LLC, owned two of the ships that they never got back. So these are direct injuries to these plaintiffs, and very substantial injuries. Otto Candies alone was injured to the tune of $150 million. So these are not nominal U.S. plaintiffs, even if there would be a nominal U.S. plaintiff exception to the strong presumption. Then the other question is, well, what if you have one U.S. plaintiff and 100 foreign plaintiffs? And I think this goes to the question Judge Jordan asked, and why I think it's helpful to just focus for the moment on the U.S. plaintiffs, and then, assuming that they get the strong presumption, what do you do with the foreign plaintiffs? So for some reason, correct me if I'm wrong, and maybe I'm misremembering, but I thought your position in the brief was, you've got to treat all the plaintiffs the same way. Yes, you do. So my 1 in 100 thing, you're going to say, no, no, no, Newsom, if it's 1, it's 101, everybody. Everybody follows the U.S. plaintiff. Yes, but I think there are two points here. One is that courts like the Ninth Circuit in Carahano, the D.C. Circuit in Simon, considered the case as a whole and said, even if there's one domestic plaintiff, let's consider it all to be the strong presumption. And we do believe that's the correct position. But even if this court does not adopt that position and separates it out, so for example, in the Tazo v. Airbus case, this court applied a different presumption for foreign plaintiffs and the strong presumption for the domestic plaintiffs. But our position here is it would make no difference. And the reason why is that if the domestic plaintiffs are allowed to go forward here, there's no basis at all in terms of convenience to dismiss the foreign plaintiffs. Because all of their supposed problems with keeping this case in the United States concerns evidence of what they consider to be the underlying fraud. That supposed problem, all of those arguments would exist in exactly the same way, whether you had the two U.S. plaintiffs or whether you had the addition of the 37 foreign plaintiffs. So there's no benefit and convenience if the domestic plaintiffs are here in dismissing the foreign plaintiffs. Whereas, of course, on the other side of the ledger, there's an enormous harm in having two separate proceedings, one in the United States, one in Mexico, to decide the exact same claims. So our position is, first, as a general matter, that you should look at the case as a whole. But even if you try to separate it out, in this case, at the very least, it does not make sense to have two separate proceedings. And to be clear, of course, the district court never said that there was, because the district court never applied the strong presumption, even to the U.S. plaintiffs. Of course, putting aside the presumption issue, which is a huge issue, I understand, their argument would be the flip side. Once you decide that some of them have to go to Mexico, it makes no sense to keep any of them here, send everybody to Mexico. So for both sides, it's an all or nothing proposition. If you have some foreign plaintiffs, they say, and I know I'm exaggerating their position a bit, if you have some foreign plaintiffs, they say, everybody goes abroad. You say, if you have some domestic plaintiffs, everybody stays here. So I don't think there's a problem in terms of which you do first. Because the bottom line is that the U.S. plaintiffs are entitled to the strong presumption. Now, obviously, if they could overcome that strong presumption, then all the plaintiffs would have to go to Mexico. But they still would have to overcome that strong presumption. And it's clear here, first, the district court never applied that strong presumption. It never even purported to do so, went out of its way to apply this unknown to the circuit court's international commerce exception in order to not apply the strong presumption. So there's never been a decision that the strong presumption has been overcome here. And certainly, if the strong presumption means anything, it cannot be overcome in a case like this one, where, first, the sole defendant is a U.S. defendant. And second, their only supposed problem with having this case in the United States is the idea that there's evidence of the underlying fraud in Mexico. And yet, even though they performed an internal investigation, even though they collected documents for the SEC, they do not even come forward with a single piece of evidence, a single witness, who they cannot bring into the United States. It was based only on attorney argument, without even an affidavit describing it in the most general of terms. And this court in the Laszlo Goryk-Dad case said specifically, that's not enough. It's not enough just for an attorney to say, we need evidence. We need these witnesses, without any kind of affidavit, without any kind of description of who these people are. And that's especially true in a case like this one, where Citigroup has all the information that they need, given the investigations that they already conducted, and also because we are at the motion to dismiss stage, where no one disputes that we are entitled to have the allegations of the complaint be accepted as true, and especially given that there is no form of nonconvenience discovery. So we are simply left to take it on faith that they are correct, that there's all this evidence of witnesses in Mexico, without any kind of proof, and certainly that's not enough to overcome the strong presumption. It wasn't enough to even overcome the lesser presumption in Laszlo Goryk-Dad. So I was a little troubled as well by the conclusoriness of the allegation that there are witnesses and evidence in Mexico that they wouldn't otherwise be able to get. Maybe this is too much to ask to put you on the spot like this, but can you represent, as an officer of the court, on behalf of your clients, that to the extent witnesses and evidence are within your control in Mexico, that you would, if you're in U.S. courts, make them all available? We're not going to put up fights about people or things coming from Mexico into the U.S. proceeding. Obviously, I can't speak to all of the clients at the moment. I can say that, from what I understand, we would do everything in our power to bring all of the evidence within our control into the United States. And if that were a stipulation that this court wanted to put on having the case in the United States, we would find that perfectly acceptable. Okay. Isn't that part of the intractable problem for both sides, which is, you think that the district court, that even if the district court got the forum nonconvenience dismissal right, it erred to the extent that it didn't put enough of a restriction on what Citigroup had to do in terms of discovery, and part of what it said was all relevant documents and all witnesses under its control, and you think that's not enough. So the promise by you to do the same thing may not be enough for them either. If this court wants to put a stricter constraint on us, that it doesn't just have to be quote unquote relevant documents, but, you know, all documents based on the federal rules or however the court wants to put it, we are completely fine with that. They fought against it. But there's a real practical difficulty with that, which is, if you are going to somehow superimpose the federal rules of civil procedure and maybe even evidence into a case that has been sent to a foreign tribunal under forum nonconvenience, who's going to litigate the federal rules and where? You're going to have a subsidiary collateral litigation going on here, like with a special master who's going to decide what's happening in Mexico under the federal rules, or you are going to try to tell a Mexican tribunal that by order of an American court it now has to apply the U.S. federal rules of civil procedure? How do you do that? I confess that it's difficult, but that's what this court has said. In several different cases, this court has affirmed decisions of the district court based on this idea that you're going to provide discovery in accordance with the U.S. federal rules. What this court has never affirmed . . . It would be a lot easier, for example, if this case had proceeded to a more evidentiary phase. You had designated or figured out which witnesses you think you would want to call. Citigroup had done the same, and then the court had said, you, plaintiffs, if the case is going to stay here, you've got to produce witnesses 1 through 22 in the United States. That's a condition of the case staying here. Conversely, to Citigroup, if you want the case sent to Mexico on forum nonconvenience grounds, you've got to produce these 17 witnesses. That's pretty clear. You know who the 17 are. You know they've got to be produced. Or you've got to produce these X set of documents, not just relevant documents. Parties fight about relevance all the time. All the time. And in this case, that fight would be colossal. We agree, and we think that's part of the problem with what the district court did. But it also goes to the question of, we don't even know who those witnesses are, what that evidence is, because they haven't produced anything yet. That's part of the problem here. On the flip side, I just want to make it clear that it's not sort of an equivalent problem in terms of our production of evidence. Because our evidence goes to our injury and our damages, which we have to produce in order to prove our claims. The evidence of the underlying fraud is entirely within Citigroup and other entities' control, not our control. And so we have absolutely no incentive to hold back evidence, and we would do everything in our power to put forward as much evidence as we possibly could in this case. You think the district court made a big mistake in taking into account your domestic client's foreseeability of being hailed into a Mexican tribunal by investing in a Mexican company. Could the district court have taken that factor into account in doing either private interest or public interest outside of the presumption of the forum? I think for the private interest, I don't think so, because it's not really about expectations. It's about where the evidence is and how difficult it would be to get into the country. For public interest, it might be sort of a background consideration. But here, I think it's important to say that there's no expectation for a US plaintiff that if I'm going to sue Citigroup, a US company, for misrepresentations it made to me in the United States, I would expect to have to do that in Mexico. I don't think that's a reasonable expectation. I'm not aware of any case that suggests that it is. Okay. Thank you very much. You've saved your full time for rebuttal. Thank you. How do I pronounce your last name? Hackey, Your Honor. Hackey, whenever you're ready. May it please the court, Your Honors. Adam Hackey of Sherman and Sterling for defendant Citigroup. I'd like to begin by simply pointing out that the standard of review is abuse of discretion. What does that really mean in this context? I mean, it's one thing to say that if you're balancing the public interest factors, balancing the private interest factors, and some go one way and some go another way, and when you're doing the balancing, you are entitled to discretionary deference, right? That makes all the sense in the world. But if you're talking about equating giving of a domestic plaintiff his or her presumption of a chosen forum, whatever that means at the end of the day, and deciding that foreseeability of litigation elsewhere takes away that presumption, isn't that more of a legal decision? I think, Your Honor, first of all, the presumption question can be addressed in the cases that the court takes account of in considering the balance of the private factors. That practice has been endorsed. That practice is what was followed here. Now, I agree with Your Honor that there could be a circumstance where the disregard of the presumption is so acute that it amounts to a legal error or that the court could otherwise describe it as an abuse of discretion. I think substantively you get to the same place there. Well, so if I'm following Judge Jordan's question, I have a similar one, which is, I mean, we've said a thousand times that an error of law is per se an abuse of discretion. And so if the judge here made an error of law, and I think your opponent is really kind of making an argument that there are, like, discrete errors of law that are then sort of, like, embedded in this otherwise discretionary kind of freewheeling analysis, and do those errors sort of so taint the analysis that we need to sort of, like, you know, sort of reverse, send back, do again, make better, don't make these errors, and crunch the factors again, or is there some sort of harmless error principle at work here by which you say, look, these errors sort of, at the end of the day, just don't really make a difference? There is a harmless error principle, Your Honor, that there has to be a substantial impact on the outcome to have not applied the proper presumption. And if you look at the way the court applied the factors in which it found every single private factor favored dismissal, found that every single public factor favored dismissal, even had it applied a strong presumption in plaintiff's favor, particularly in the context of a situation where it's 37 to 2, okay, foreign plaintiffs to U.S. plaintiffs. It could have exercised its discretion in that fashion and have been affirmed. But it could also have split the plaintiffs. It could have, Your Honor, but I think this is where the master of the complaint theme that runs all the way through the plaintiffs' briefs comes back to them. These plaintiffs, right, this is a large group of investors, sophisticated parties, represented by one council, sophisticated council, decided to all file a lawsuit together, knowing that 37 of them were foreign, knowing that the lawsuit was the underlying facts that gave rise to the situation occurred in Mexico. They have their claims that Citi was behind it and so on. But they would have known this was an issue. They have said in their own brief, we're not required to split our claims. We shouldn't have to split our claims. This was their decision. Can I play devil's advocate for a second? Of course, Your Honor. If they had decided to split their claim and file two separate lawsuits, one with the two domestic plaintiffs, right, and one with the foreign plaintiffs, you would have moved to consolidate and your arguments would have been exactly the same as they were in this case. And the district court would have done exactly the same thing that it did in this case. It would have made no difference. I'm not, I think, I think you're right, Your Honor, that it wouldn't have made a difference to the court's decision. I'm not sure I would have moved to consolidate necessarily. You wouldn't have allowed the two domestic plaintiffs to stay in the U.S. and litigate against Citi Group. No, I would have moved against them because I think this is a situation, whether you apply the presumption or you don't, it's overcome. And I'm happy to sort of walk through, I think, why that's so. Tell me then, this case, as Judge Newsom, I think correctly said, has tentacles in Mexico, but we're on a 12B6 motion or at the 12B6 stage, better said. And the allegations are that the alleged misconduct on Citi Group's part took place largely, if not exclusively, in the United States by a division of Citi Group that was based in Florida and New York and by individuals who worked at the time for Citi Group within the United States. Why don't those facts, as alleged, matter a lot in the weighing process? They don't matter, not at all, but they don't matter anywhere near as much as the plaintiffs suggest. And this is what Judge Gales got right, looking at the real substance of this case. The mechanism, if you will, through which this alleged conspiracy occurred, there is no dispute that it was this factoring of receivables cash advance program in Mexico had three parties to it, Pemex, the Mexican state oil company, Oceanografía, the principal oil field services company to Pemex, and Banamex, one of the largest banks in Mexico, a wholly owned subsidiary of Citi Group. So we can debate what Citi Group's role was all day. No, there's no debate. That is the mechanism of the fraud. We're taking the allegations of the complaint as true. Understood. The allegations are that the U.S.-based Citi Group people and divisions had a substantial role in the alleged fraud. I'm going to get there, Your Honor. The parties agree. You can't unring the bell of the fact that the mechanism of the fraud, again, these plaintiffs were all creditors of Oceanografía, a Mexican company, was this factoring cash advance program. Every single regulatory action that's been taken in the United States, in Mexico, it all stems from that nucleus. Now their allegation is that Citi Group was behind it, that Citi Group orchestrated it somehow from the United States. Fair enough. But look at their actual allegations. Their first cause of action is a RICO claim. Guess who's alleged to be involved in the RICO enterprise? OSA, the Mexican company in which they invested, to which they extended credit. You can't have a RICO claim with just Citi. They chose selectively to only name Citi to avoid making our forum nonconvenience motion  They pled a RICO enterprise involving a Mexican entity where the principal fact pattern is a factoring cash advance program in Mexico. That is their claim. Now if you look at their common law conspiracy claim, it's exactly the same. Look at the counts. Which party did they allegedly conspire with? OSA. Citi Group did not conspire allegedly by itself. It was with OSA. Look at the aiding and abetting claim. This I think is the most telling. Guess who the primary violator is in their complaint? OSA, the Mexican company. Guess who's the alleged aider and abetter? Citi. So while they can argue that this is just about Citi and we need not look past Citi, that is not what their claims are. And it would not make sense for that to have been their claims. The whole, you know, Judge Gales did not have to put on blinders. This arises from a tri-party cash advance program where there admittedly was a fraud in Mexico. There is a litigation now about to what extent is Citi Group responsible for that. Admittedly not just a fraud in Mexico. Well, that's the part that's admitted. No, no. What it... Sorry. Sorry. Admitted as a... I'm not saying you've admitted it. It is alleged in the complaint that Citi Group itself and its own internal investigation found malfeasance on the part of some of its own people, right? In Mexico. Now, they're... You're telling me that the complaint doesn't allege that Citi Group didn't find that anybody in the U.S. did anything wrong? Well, it certainly conclusively alleges that. And... That's not conclusory. Citi Group conducted an internal investigation and found that Mr. X committed fraud. That's not conclusory. That's factual. I know. But if you... Your Honor, if you were to look at, for example, paragraphs 93 of the complaint at SEC, this isn't, again, a situation where the complaint's allegations and the way they are characterizing in their briefs are at odds. The terminated employees were in Mexico. They were employees of Banamex. And that goes to this whole issue of what's the problem with discovery? I can tell you, Your Honor, what the problem with discovery is that there's a huge amount of discovery that is going to be needed from third parties in this case. Everybody involved with this at Banamex, at Oceanografia, at Pemex, I presume, is a terminated former employee, likely in Mexico. Those are the witnesses to this actual scheme, including to what extent Citi was involved in it. Do we know any of that, factually? We do. Your Honor, if we were to look at the complaint, I'm going to look specifically at it. Paragraph 93. They say that Citi issued a memo saying that it had terminated 11 employees as a result of its investigation into the fraudulent scheme, including, quote, four managing directors, two of whom are business heads in Mexico. We were entitled, Your Honor, what's good for the goose is good for the gander, to rely on their complaint. What about the other two? They put the witnesses in Mexico. Or the other two. They don't explain that. If they specify that two of them are in Mexico, does that lead to an inference that the other two were in the United States? I think, Your Honor, it could lead to the equal inference that two of them are non-managing directors in Mexico. Candidly, I do not know the answer to that. Did either side submit evidence to the district court about who the witnesses would likely need to be and where documents were stored and what third parties had access to them and would have to be subpoenaed or anything like that, or no? No, Your Honor. What the parties relied on and the district court relied on, certainly what defendant relied on, was plaintiff's own allegations. I could go on. They have detailed allegations about three Citi employees in Mexico. They're actually Banamex employees, but Citi in Mexico, who were arrested. They have allegations about Mr. Yanez, who is the CEO of Ocean Grafia, who was also arrested and is in Mexico. This was a public event. If you look at the actual SEC settlement that Citi entered into, which they introduced into the record on appeal as a publicly filed document, it's all about what occurred at Banamex in Mexico and the SEC's conclusion that Citi did not maintain adequate internal controls. Not that Citi participated in some fraud. In fact, the SEC complaint alleges that, or order states that, Citi itself learned about the fraud in 2014 when the Mexican government told them about it. Now, they're entitled to try to recharacterize that, consistent with Rule 11, and plead a different case. But, Your Honor, respectfully, looking at the facts that gave rise to this case, plaintiff's own allegations, and I encourage the court to look at paragraphs 93 at SEC in the amended complaint, they place the witnesses in Mexico. What does the complaint say about the divisions of Citi Group in the United States and what they allegedly did? Your Honor, the plaintiff's complaint alleges that there's a unit called ICG, the Institutional Client Group, which cuts across, you know, geographies and entities, and therefore we're involved. Again, that's their allegation. Involved in what way? They claim they were involved in the fraud. In my opinion, they do not specify it in any great detail. We, of course, made a 9B and a 12B6 motion. That might be a 9B issue, but it's not . . . I just don't . . . and at the end of the day, you may still prevail because of the applicable standard of review, but I don't see how you can say that there's no locus of this case in the United States. It might be that more of the locus is in Mexico, I can understand that, but to say that nothing is here in the United States seems to me a bit of an exaggeration given the allegations in the complaint. Your Honor, I don't think that our . . . I appreciate that, Your Honor, and I don't think our argument is that there's nothing as alleged in the United States. I wouldn't argue that, but what I would argue is that there clearly is a lot in Mexico, and I think the very practical judgment that the district court made as the one who was going to have to manage this case was that he can order a city group as a condition to provide discovery, to consent to jurisdiction in Mexico, to agree to tolling, to allow them time to file in Mexico. What Judge Gales could not control was what third parties in Mexico would do, and I think he looked at that in an extremely practical way and said, we can have a case in Mexico because I'm ordering a city to be there, and if they're not, they're going to be right back in my courtroom. He has no such power over the third parties in Mexico, and I think that weighed very heavily on the court. I also think it weighed on the court that, again, they chose to . . . although the court didn't state this explicitly, we think it would be correct to say that when you have only two out of 39 plaintiffs, Your Honor, who are U.S. citizens, that ought to make a difference. When plaintiffs have chosen, again, they elected to plead this case as one. Mr. Hackey, you've avoided one of his major arguments, and that is that the district court erred because it seemed to determine that the foreign business exception was sufficient to overcome the presumption in favor of the domestic plaintiffs. Are you asserting that that is a correct application of the law, that the foreign business exception, the feigned surprise, should in fact be enough to overcome that presumption? May I continue, Your Honor? Yeah. All the time you need. Thank you. Thank you. We believe that is a correct statement of law, and we have cited cases in our brief for the proposition. Not that the presumption completely disappears if you have a business party that purposefully avails itself essentially of foreign commerce, but that there can be, and this is what Judge Gale said, a reduced level of deference when you elect to invest as a bondholder in a foreign company. It's not any business transaction touching a foreign country. That would, I would agree with my adversary, swallow the rule. I think he was saying something more nuanced, which is that when you have a large group of investors, most of them foreign, by the way, who chose to invest in a Mexican company, their expectations about whether they would be able to sue in the United States versus Mexico, that seems like a reasonable proposition. And I don't think, Your Honor, that there is any Eleventh Circuit case law that says that there is no such principle. And I haven't even reached the issue of whether or not these two plaintiffs ought to be a court of the normal deference of a U.S. party, given that they both are indirectly involved with this. Otto Candes, the complaint itself alleges, and this is very, very important and it's in our brief, is the affiliate of the entity in Mexico, which is also a plaintiff, Candes Mexico, that actually was involved and suffered the injury with OceanGrafia. And Waypoint, the other U.S. plaintiff, was not an investor in OceanGrafia at all. It was simply the asset manager for a British Virgin Islands fund that actually invested in OceanGrafia and suffered the injury. So there are two, five percent of their case, there are two U.S. plaintiffs are remote from the injury. Now, we could have made an argument, perhaps, that they lacked standing. We concluded that that was too factual to pursue as a 12B6 ground. But that's a different question about the amount of deference such a plaintiff, when their own complaint alleges they were one step removed from the activity, ought to be given in this context. And we cite cases to that effect. For example, an assignee of a foreign plaintiff, even if they're a U.S. entity, does not get the same level of deference. What does it mean to require you to make reasonably available all relevant documents and witnesses within your control? And I'm not blaming Judge Gales, I'm just saying, how does anybody manage that standard? Witnesses under your control, maybe, okay, I understand, right, employees, et cetera, but all relevant documents within your control? Who determines relevance? So I think, Your Honor, that what the, there is an objective way to enforce all of this, and I think that what the district court had in mind was that, was actually, this is quite a broad obligation on behalf of the city, we've got to make available all witnesses and documents under our control reasonably. My own view is that the Federal Rules of Procedure don't require us to do more than what's reasonable in terms of discovery. We have proportionality in those standards in the Federal Rules, and I think the judge pretty sensibly thought, they haven't even filed their case yet in Mexico. I'm maintaining jurisdiction over this case, including to reinstate it if the defendant doesn't cooperate in discovery. Let's start with something basic, broad, and simple. We're going to have to turn over all documents and witnesses to the extent reasonable, and if there are disputes, the courthouse door is open. Not just reasonable, but relevant. Right, relevant. I think that also would be, they would not be entitled to irrelevant evidence if we proceeded in the U.S., so I think that from that perspective, he didn't narrow their rights, and the courthouse doors are open on this issue. And we actually have a Damoclean sword above us, because if we don't comply with our obligations, the order is that the case will be reinstated. So yes, it could theoretically have been more specific, of course, but is it workable in this posture? I think so, and I think the district court is backing that up by inviting the parties to come back to it if they cannot agree on what that means. Okay, let me ask you to go one, and I'll ask your colleague the same question. So let's say that the litigation gets filed in Mexico. They ask you to give them a certain set of documents, which might not be available under Mexican law. You say, Mexican law doesn't require us to turn over these documents, we're not turning them over. They go back into the district court here and say, hey, they refuse to turn over relevant documents. What happens? Well, I think if, if in fact we interpose such an objection, I think the district court could say, you have to produce these, and of course we'd have to comply, or the district court would hear our argument as to why we think it's inappropriate in the context of the U.S., of the Mexican litigation to have us turn over those documents. But I'm not trying to set that up as a trap, your honor, for our membership. No, and I'm not suggesting that on either side. I'm trying to work out the practicality of how you manage that sort of a condition on a forum non-convenience dismissal for both sides. I mean, my sense is that once we had to go back to the court the first time, we'd get a lot more detailed guidance. But I don't think it was inappropriate for the court to defer that for another day before they've even filed their case. So to Judge Jordan's question, now I'm thinking about the practicalities as well, is the district court in the Southern District of Florida going to basically be the Mexican court's magistrate judge now? They're going to be, you know, he's going to be sort of adjudicating all of these discovery disputes as you go to Mexico and you have your little skirmish there, and then, you the Southern District and to adjudicate the discovery disputes? I don't think so, your honor. I think that the procedure will be that the case is in Mexico and that if we end up in a dispute as to whether we are providing relevant evidence within our custody and control in a reasonable fashion, we will be in front of the judge. And my sense is that if we were to take an unreasonable position, we would have a problem. So there's that. And I think that if . . . I think the district court is fully capable of setting the rules for the road if we had to go back to it. I do not envision a world where we're going back to the district court judge as if it were a discovery referee or a master. Okay, Mr. Ronke, thank you very much. Thank you. Back into the frying pan, Mr. Cooper. Just a few points I'd like to make. The first is that in this question of whether or not there was an error of law and whether or not there was a harmless error in applying the wrong standard, I think the first key point is applying the wrong standard and not applying the strong presumption is an error of law. And this court has reversed when district courts apply the wrong presumption, for example, in cases like SME racks. There's absolutely no basis in the record in the order to suggest that they met the strong presumption or the district court applied the strong presumption. And that's especially true because the language that this court has used for the strong presumption is positive evidence of unusually extreme circumstances. Here not only was there not positive evidence of unusually extreme circumstances, there was literally no evidence at all from their side of what documents or people they would need that could not be brought into the United States. Can I ask you a question that I asked you on during your opening but is continuing to bug me a little bit and he touched on it in his argument. The nature of the claims that you have brought, you know, RICO with somebody, conspiracy with somebody, aiding and abetting with somebody. So it's true, I think, that at this stage the district court has to take your complaint as it finds it. But the district court doesn't have to ignore the likelihood or the probability of how those claims will play out in real litigation, right? I mean, isn't that the purpose of forum nonconvenience? Sort of projecting in this posture on the basis of the complaint, what's this lawsuit going to look like? And given the nature of your claims, is it unreasonable to conclude that a lot of the I think it is unreasonable. And first, I'd like to point out that they ignore some of our other claims. For example, breach of fiduciary duty directly against Citigroup. But let's put that aside for the moment and just focus on the RICO claims, aiding and abetting fraud for the moment. The point there is that it's true that if there was this great dispute about the existence of a fraud in Mexico, then there might be a lot of evidence that we need for Mexico. But there is not. Citigroup has completely conceded, and you'll see this on paragraph 92 of our complaint, where in their own internal report, they said there was a fraud. Their CEO, this is docket 83-4, said there was a fraud. So there's no dispute about that. What the dispute is about is what was the injury to us and what was Citigroup's degree of participation. And for that issue, there is no reason to believe, certainly in the absence of discovery, that the majority, let alone all of that evidence, is in Mexico. And the district court did no analysis at all of where that evidence would be. It was literally one sentence in the order that said, defendants say they will need this evidence and witnesses for their defense. That was it. One sentence. That cannot be enough to overcome the presumption, let alone the strong presumption. And the last thing I'd like to point out is that, you know, there's been a lot of talk about sort of the tail wagging the dog. There are... I see my time is up, but... Finish up. Thank you. I'd like to just point out that there's been a lot of talk about the tail wagging the dog. There are only two U.S. plaintiffs. Of course, there are actually two additional ones that would join in a second amended complaint. But it's true. The majority are foreign plaintiffs. But you also have to look at the other side of it, which is that there's only one defendant, and that is a U.S. defendant who is alleged to have committed fraud, to have given misrepresentations in the United States. So this is not an unusual case to bring in the United States. This is not foreign plaintiffs bringing claims like the ones that this court has routinely affirmed dismissals where there's a plane crash abroad, there are accidents abroad. No. This is a fraud that happened in the United States, and the U.S. plaintiffs and the foreign plaintiffs are entitled to bring that claim here. Thank you both very much. It's been very helpful. Thank you. We're in recess for today.